UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.

Nikki McIntosh, on her own behalf
and on behalf of all other
similarly situated passengers
scheduled to have been aboard
the *M/V Liberty of the Seas*,

    Plaintiffs,

v.     **CLASS ACTION**

ROYAL CARIBBEAN CRUISES LTD.,

    Defendant.
_____/

## **COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff, Nikki McIntosh, on her own behalf, and on behalf of all other similarly situated passengers scheduled to have been aboard the *Liberty of the Seas*, hereby sues Defendant, ROYAL CARIBBEAN CRUISES LTD. ("RCCL"), and for good cause alleges:

## **JURISDICTION AND PARTIES**

1. Plaintiff is a resident of Canada and Defendant RCCL is a corporation incorporated under the laws of Liberia having its principal place of business in Florida.

2. The matter in controversy exceeds the required amount, exclusive of interest and costs, and is a class action brought under this Honorable Court's jurisdiction pursuant to 28 U.S.C. § 1332(d)(2). In the event that class status is not certified, then this matter is brought under the diversity jurisdiction of this Honorable Court.

3. Defendant, RCCL, at all times material, personally or through an agent;

    a. Operated, conducted, engaged in or carried on a business venture in this state and/or county or had an office or agency in this state and/or county;

    b. Was engaged in substantial activity within this state;

    c. Operated vessels in the waters of this state;

    d. Committed one or more of the acts stated in Florida Statutes, Sections 48.081, 48.181 or 48.193;

    e. The acts of Defendant set out in this Complaint occurred in whole or in part in this county and/or state.

    f. The Defendant was engaged in the business of providing to the public and to the Plaintiff in particular, for compensation, vacation cruises aboard the vessel, Liberty of the Seas.

4. Defendant is subject to the jurisdiction of the Courts of this state.

5. The causes of action asserted in this Complaint arise under the General Maritime Law of the United States.

6. At all times material hereto, Defendant owned, operated, managed, maintained and/or controlled the vessel, *Liberty of the Seas*.

## GENERAL ALLEGATIONS COMMON TO ALL COUNTS

7. This Class Action lawsuit involves Defendant RCCL's knowing and intentional decision to effectively force individuals who had purchased a cruise aboard the Liberty of the Seas leaving August 27, 2017 to fly to Texas while it was in a state of emergency due to Hurricane Harvey, because RCCL would not cancel or modify its planned cruise. In so doing, RCCL forced hundreds of would be passengers, including children and the elderly, to be subjected to catastrophic flooding and potential loss of life.

8. Thousands of passengers traveled to the area around the Port of Galveston in Texas before and during Hurricane Harvey because RCCL would not offer *any* refund on their fare paid for the

August 27 – September 3 cruise trip on the *Liberty of the Seas* and would not cancel the voyage until *after* the original departure date.  These passengers were strong armed into travelling to Houston based on RCCL's assurances that safety was the primary concern and the voyage would sail as scheduled; combined with RCCL repeatedly advising passengers that **if they cancelled they would lose the entire cost of the purchased cruise**.

9. Consequently, hundreds of passengers were subjected to days of danger, terror, and trauma as a result of being forced to travel into the path of a category 4 hurricane.  The terror was amplified by forcing them to endure the category 4 hurricane in a state, or even country, far away from their homes and family, familiar surroundings, and at the mercy of available public facilities and services.  These passengers were consequently forced to spend days in a foreign location trapped by a devastating storm – all of which could have been easily avoided if simply given the choice to stay at home and reschedule the cruise.

10. RCCL's misconduct was predicated on a profit motive because, simply put, cruise lines like RCCL make no money when passengers don't sail.  Defendant RCCL's knowing, intentional and reckless conduct subjects RCCL to the imposition of punitive damages.

11. On Thursday, August 24, 2017, RCCL issued information online for those passengers traveling on the *Liberty of the Seas:*

> "Hello, this is Royal Caribbean International.  We would like to provide you with important information regarding your Sunday, August 27, sailing onboard Liberty of the Seas.
>
> We are actively monitoring path and progression of Hurricane Harvey. At this time, Liberty of the Seas **will keep her original schedule for Sunday's** turnaround in Galveston, Texas. Should we make any changes to Liberty of the Seas itinerary, we will make sure to inform our guests and travel partners.
>
> Royal Caribbean will provide you with an update tomorrow by 12:00 PM EST. We appreciate your understanding and cooperation

12. By Friday August 25, 2017, Hurricane Harvey had strengthened to a Category 2 Hurricane

and at 6:30 a.m. all flights to and from Corpus Christi, Texas were cancelled.

13.     At noon, on Friday August 25, 2017, the Port of Galveston (where the subject cruise was supposed to begin) closed to all vessels and set the port condition at Zulu meaning all port waterfront operations were suspended.



14. Also on Friday August 25, 2017 it was widely reported by national news agencies such as CNN that residents of Texas' coastal cities were evacuating their homes in anticipation of the impending hurricane.

15.     At 2:08 pm on August 25, 2017, RCCL sent another update to its prospective passengers aboard the *Liberty of the Seas:*

> "Hello, this is Royal Caribbean International. We would like to provide you with important information regarding your Sunday, August 27th, sailing onboard Liberty of the Seas.
>
> We are actively monitoring path and progression of Hurricane Harvey.  At this time, **Liberty of the Seas will keep her original schedule for Sunday's turnaround in Galveston, Texas**. Should we make any changes to Liberty of the Seas itinerary, we will make sure to inform our guests and travel partners.
>
> Royal Caribbean will provide you with an update tomorrow by 12:00 PM CT. We appreciate your understanding and cooperation."
>
> Emphasis added.

16. By 5:00 p.m., **Carnival Cruise lines had already rerouted** two of its cruise ships that were scheduled to arrive in Galveston on Saturday, and another Carnival ship that was supposed to arrive in Galveston on Sunday (just like the Liberty of the Seas) spent another night in Cozumel. As CNBC.com reported:



16.

17. As of Friday afternoon, when Carnival cancelled and/or changed its cruises and yet RCCL sailed straight ahead, <u>the National Hurricane Center was advising that the entire Texas coastline, including Galveston was in the cone of danger for this deadly storm</u>.



17. On Saturday, August 26, 2017, the Port of Galveston remained closed:



19. At 1:40 p.m., RCCL's Chief Meteorologist James Van Fleet, posted on twitter:

> "**Weather looking favorable tonight and tomorrow**. Need to verify infrastructure is safe Port/Island on a 7pm conference call, then will update."

20. As of 3:25 p.m. on Saturday August 26, 2017, RCCL was still giving information to passengers as though they were going to depart as regularly scheduled:

> "Liberty of the Seas is keeping behind the storm and is currently making her way back to Galveston. **Our intention is to keep with our original schedule** return to Galveston on Sunday. However, because of the path and progression of Hurricane Harvey, the situation remains uncertain and the Port of Galveston remains closed. We ask that guests scheduled to sail on Liberty of the Seas tomorrow not proceed to the port until we let you know it is okay to do so."

21. By this time, catastrophic flooding had already begun. Hundreds of flight were cancelled and highways were flooded, impassable and deadly. **Yet RCCL was still attempting to find a way to make the scheduled sailing**.

22. As of Saturday, August 26, 2017, 10:15 p.m., RCCL sent an email to all its passengers which stated:

> This is Royal Caribbean International with important information regarding your sailing onboard Liberty of the Seas. Due to Tropical Storm Harvey and weather conditions around the Galveston/Houston area, as well as the port's current closure, **Liberty of the Seas will arrive to the Port of Galveston later than originally scheduled**. Because of this, boarding for your cruise will now take place on Monday, August 28 between noon and 3 p.m. We ask that guests not arrive to the port before noon.
>
> Emphasis added.

23. Despite the deadly weather situation and catastrophic flooding, RCCL still did not cancel its cruise, but rather pushed back the sailing roughly 24 hours.

24. At or around this time, was the last chance that these passengers likely could have escaped being trapped in Hurricane Harvey's flood waters, but RCCL did its best to convince these

passengers to stay *directly* in harm's way.

25. On Sunday, August 27, 2017, the originally scheduled date of departure, the Port of Galveston (not surprisingly) remained closed. And at 10:29 a.m., passengers received the following email message about their upcoming cruise from RCCL:

> This is Royal Caribbean International with important information about your Liberty of the Seas sailing. **Due to Tropical Storm Harvey, current weather conditions, and port closure in Galveston, boarding for your cruise will now take place on Monday, August 28 between noon and 3 p.m**. We are sorry for the impact that this storm has had on your vacation and we are excited to welcome you onboard. Guests sailing with us will receive a one day refund of the cruise fare paid inthe form of a refundable onboard credit, as well as a 25% percent future cruise credit, based on cruise fare. **Guests who can't sail with us due to being in an affected area will receive a 100% future cruise credit based on the cruise fare paid**. If you have any questions, please do not hesitate to contact us at 1 (866) 562 7625.

26. Remarkably, the very day of the cruise was the first time that RCCL actually began to offer passengers the ability to reschedule the cruise and receive a future cruise credit. Prior to this, again, all of the passengers were effectively forced to travel to South Texas unless they wanted to forfeit the entirety of what they paid for their cruise. As such, it was simply too late for these passengers to avoid being trapped in the path of Hurricane Harvey.

27. Finally, at 3:01 p.m., on Sunday August 27, 2017,RCCL cancelled the subject cruise, issuing the following email notice:

> This is Royal Caribbean International with important information about your Liberty of the Seas sailing. Due to the severe impact of Hurricane Harvey and Galveston port closure, we unfortunately have to cancel your cruise scheduled for Sunday, August 27. We are sorry for the impact that this storm has had on your vacation and appreciate your patience as we worked through this. Please know that this decision was made with your safety in mind.
> Your cruise fare and fees will be 100% refunded to the original form of payment. It may take 4-5 business days to reflect on your account. We are looking forward to welcoming you back, so we are offering a 25% future cruise credit, based on your cruise fare, if you choose to book another cruise in the next 30 days. Please stay safe.

28. Simply put, had the cruise been cancelled a day or two earlier, just like Carnival did, then these passengers would not have been trapped in the path of Hurricane Harvey and subjected to 5-6 days of terror, hardship and inconvenience in a place foreign to them. As one person on Social Media aptly described:



29.     As a result of the actions of RCCL, hundreds, if not thousands, of passengers traveled to Texas for a scheduled departure on August 27, 2017 even though a catastrophic weather event had already made ***multiple*** landfalls in Texas.  These passengers were subjected to 5-6 days of being trapped in a state of emergency, often without power, limited food and water, and at all times material at risk of death.  Many families travelled to South Texas with small children.  As a result of RCCL's gross negligence, toddlers were forced to wade through flood waters in search of food.

30.     RCCL knew these hurricane force winds, airports closures, and major roadways shut down due to catastrophic flooding but nonetheless, up until the day of departure, the *Liberty of the Seas* was still scheduled to leave on August 27, 2017 intending to sail to Mexico, carrying thousands of passengers.

31.     Each and all of the foregoing conditions, including but not limited to, the impending dangerous weather conditions in Texas, were known to RCCL prior to the time RCCL decided to finally offer a refund to passengers on August 27, 2017, with Nikki McIntosh and all other passengers similarly situated.  As such, RCCL knowingly, intentionally and recklessly decided not to offer refunds on the *Liberty of the Seas* before August 27, 2017, forcing passengers to travel to Texas during a catastrophic weather event or risk losing their entire pre-paid cruise fare, thereby placing the lives at risk of each and every one of the passengers.

## CLASS ACTION ALLEGATIONS

32.     This action is brought by Plaintiff on her own behalf, and on behalf of all others similarly situated, under the provisions of Rule 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure.

33.     The class so represented by the Plaintiff in this action, and of which Plaintiff is a member, consists of all passengers aboard the *Liberty of the Seas* who were subjected to traveling to the Galveston, Texas area during Hurricane Harvey.

34. The class of passengers was subjected to severe distress both physical, psychological and emotional; endured pain and suffering, along with physical and emotional injury as a result of Defendant RCCL's negligence and/or gross negligence and/or intentional conduct.

35. The exact number of members of the class is unknown at this time, but it is estimated that there are in excess of 500 members. The class is so numerous that joinder of all members is impracticable. This action satisfies the requirements of Rule 23(a)(1).

36. There are common questions of law and fact that relate to and effect the rights of each member of the class and the relief sought is common to the entire class. The same misconduct on the part of Defendant RCCL caused the same or similar injury to each class member. All class members seek damages under the general maritime law of the United States for Intentional Infliction of Emotional Distress, Negligent Infliction of Emotional Distress and Negligence. Accordingly, this action satisfies the requirement of Rule 23(a)(2).

37. The claims of Plaintiff are typical of the claims of the class, in that the claims of all members of the class, including Plaintiff, depend upon a virtually identical showing of the acts and omissions of Defendant RCCL, giving rise to the right of Plaintiff to the relief sought herein. Defendant RCCL was at all times material hereto engaged in the same conduct to the detriment of the entire class of Plaintiffs. Accordingly, this action satisfies the requirements of Rule 23(a)(3).

38. Plaintiff is the representative party for the class, and is able to, and will, fairly and adequately protect the interests of the class. There is no conflict between Plaintiff and other members of the class with respect to this action, or with respect to the claims for relief herein. The attorneys for Plaintiff are experienced and capable in the field of maritime claims for cruise ship passenger injury, including class actions, and have successfully represented claimants in other litigation of this nearly exact nature. Two of the attorneys designated as counsel for Plaintiff,

Jason R. Margulies and Michael A. Winkleman, will actively conduct and be responsible for Plaintiff's case herein. Accordingly, this action satisfies the requirement of Rule 23(a)(4).

39. This action is properly maintained as a class action under Rule 23(b)(3) inasmuch as questions of law and fact common to the members of the class predominate over any questions affecting only individual members, and a class action is superior to the other available methods for the fair and efficient adjudication of this controversy.  In support of the foregoing, Plaintiff alleges that common issues predominate and can be determined on a class-wide basis regarding RCCL's failure to exercise reasonable care under the circumstances, by *inter alia*, deciding not to cancel or give refunds to passengers booked on the *Liberty of the Seas* for departure on August 27, 2017 prior into hurricane-force winds, flooding and dangerous weather conditions in Texas, the location of the departure port, despite NOAA weather, marine forecasts and warnings posted as early as August 23, 2017.

40. A class action is superior to other available methods for the fair and efficient adjudication of this controversy because it is unlikely that individual plaintiffs would assume the burden and the cost of this complex litigation, and Plaintiff is not aware of any class members who are interested in individually controlling the prosecution of a separate action. The interests of justice will be served by resolving the common disputes of the class members with RCCL in a single forum, and individual actions by class members, many of whom are citizens of different states would not be cost effective. The class consists of a finite and identifiable number of individuals which will make the matter manageable as a class action.

41. RCCL's passenger ticket contract contains a contractual provision which attempts to limit its passengers' right to file their claims against RCCL as a class action, but said provision is void

because such an attempt by RCCL to limit its liability to passengers violates 46 U.S.C. 30509.[1]

*See Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1335–36 (11th Cir. 1984). Additionally and/or alternatively, the above provision should be deemed null and void as RCCL acted intentionally[2] by placing passengers in dangerous conditions in the state of Texas that included 130 mph winds, flooding and mass destruction. This identical contractual provision has been upheld by other decisions in this district, but this action seeks, in good faith, the extension of modification of existing law. The Eleventh Circuit Court of Appeals has not ruled on the enforceability of said contract.

## **COUNT I – NEGLIGENCE**

Plaintiff re-alleges, adopts, and incorporates by reference the allegations in paragraphs 1 through 31 as though alleged originally herein and further alleges:

42. It was the duty of Defendant RCCL to provide Plaintiff and all others similarly situated with reasonable care under the circumstances.

43. RCCL and/or its agents, servants, and/or employees breached its duty to provide Plaintiffs with reasonable care under the circumstances.

44. Plaintiff was injured due to the fault and/or negligence of Defendant RCCL, and/or its agents, servants, and/or employees as follows:

  a. Failure to use reasonable care to provide and maintain a safe embarkation for

---

[1] § 30509(a)(1)(A) states: "The owner, master, manager, or agent of a vessel transporting passengers between ports in the United States, or between a port in the United States and a port in a foreign country, may not include in a regulation or contract a provision limiting [...] the liability of the owner, master, or agent for personal injury or death caused by the negligence or fault of the owner or the owner's employees or agents."

[2] "[C]ontractual exculpatory clauses absolve the exculpated party only from ordinary negligence and should not be construed to include loss or damage resulting from intentional or reckless misconduct, gross negligence, or the like." *In re New River Shipyard, Inc.*, 355 B.R. 894, 904 (Bankr. S.D. Fla. 2006)

    Nikki McIntosh and others similarly situated, fit with proper and adequate safety, protection, and care; and/or

b. Knowingly refusing to cancel and/or offer refunds to passengers as a result of severe weather conditions at or near the port where the trip was supposed to depart; and/or

c. Failing to have proper policies and procedures in place to determine whether to offer refunds as a result of dangerous weather conditions; and/or

d. Deciding not to cancel the trip and/or offer refunds despite severe weather warnings; and/or

e. Failing to have adequate technology capable of properly monitoring weather conditions in real time; and/or

f. Forcing passengers to travel into an area experiencing hurricane-force winds and/or flooding and/or otherwise wise perilous conditions; and/or

g. Failure to reasonably offer refunds to passengers not wishing to travel to Texas during a catastrophic weather event; and/or

h. Failing to notify and alert passengers with reasonable and/or sufficient notice that the trip would be cancelled so they could avoid traveling to an area experiencing a catastrophic weather event and/or seek safe harbor before encountering the storm; and/or

i. Failing to warn passengers of the dangers of leaving their homes in light of the expected weather conditions; and/or

j. Failing to promptly offer refunds before cancelling the departure; and/or

k. Failing to alter the schedule and/or departure port; and/or

l.  Exposing passengers to weather conditions that they were unprepared for without proper warning from RCCL; and/or

m.  Failing to promulgate and/or enforce adequate policies and procedures to offer refunds to passengers before the expected catastrophic weather event made landfall near the departure port; and/or

n.  Failing to promulgate and or enforce adequate policies and procedures to protect passengers traveling to a port with a known catastrophic weather condition; and/or

o.  Failing to use reasonable care to promulgate and/or enforce adequate policies and procedures to ensure the departure schedule was modified when landfall of a hurricane near the departure port became likely to protect passenger safety; and/or

p.  Exposing its passengers to hurricane force weather conditions; and/or

q.  Failure to provide adequate training, instruction, and supervision to the RCCL employees; and/or

r.  Failure to promulgate and/or enforce adequate policies and procedures to ensure that safety would not be compromised for cost and/or profits; and/or

s.  Failure to adequately notify *Liberty of the Seas* passengers that they had an option before the hurricane made landfall in Texas of receiving a refund for their trip; and/or

t.  Failure to adequately notify *Liberty of the Seas* passengers that refunds were available before the scheduled departure date; and/or

u.  Failure to promulgate policies and/or procedures aimed at preventing

  thousands of passengers from traveling to a state experiencing a catastrophic weather event to ensure the reasonable safety of its passengers; and/or

 v. Failure to promulgate policies and/or procedures aimed at ensuring an adequate emergency plan to protect the health and welfare of passengers during an emergency; and/or

 w. Failure to determine and/or appreciate the hazards associated with having passengers to travel to an area experiencing a catastrophic weather event; and/or

 x. Knowing, as a result of previous similar incidents, of the likelihood of a threat to passenger safety resulting from all of the above, yet failing to take corrective action and/or implement policies and procedures aimed at preventing and/or mitigating the harmful effects of the of the subject incident; and /or

 y. Failure to amend its cancellation policy to allow these passenger to cancel their cruise without financial penalty in light of the impending storm;

 z. Failure to promulgate adequate ticket and/or refund policies aimed at ensuring the safety of passengers.

45. At all material times, Defendant RCCL had exclusive custody and control of the vessel, *Liberty of the Seas*.

46. Defendant knew of the foregoing conditions causing Plaintiff's injuries and did not correct them, or the conditions existed for a sufficient length of time so that Defendant in the exercise of reasonable care under the circumstances should have learned of them and corrected them.

47. As a result of the negligence of RCCL, Plaintiff was injured about Plaintiff's body and

extremities, suffered both physical pain and suffering, mental and emotional anguish, loss of enjoyment of life, temporary and/or permanent physical disability, impairment, inconvenience in the normal pursuits and pleasures of life, feelings of economic insecurity, disfigurement, aggravation of any previously existing conditions therefrom, incurred medical expenses in the care and treatment of their injuries including life care, suffered physical handicap, lost wages, income lost in the past, and their working ability and earning capacity has been impaired. The injuries and damages are permanent or continuing in nature, and Plaintiffs will suffer the losses and impairments in the future.

**WHEREFORE**, the Plaintiff demands judgment for all damages recoverable under the law against the Defendant, including punitive damages, and demands trial by jury.

## COUNT II – NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

Plaintiff re-alleges, adopts, and incorporates by reference the allegations in paragraphs 1 through 31 as though alleged originally herein and further allege:

48. At all times material, due to the negligence and/or gross negligence and/or intentional conduct of the Defendant, Plaintiff and all others similarly situated were placed in an immediate risk of physical harm. Said risk of physical harm included but is not limited to: injury and/or death and/or severe emotional and/or psychological trauma.

49. Defendant's negligence and/or gross negligence and/or intentional conduct caused severe mental and/or emotional harm and/or distress in the Plaintiff and all others similarly situated, such as fear and anxiety. These emotional injuries and/or damages have also resulted in physical manifestations, such as sickness, nausea, exhaustion, fatigue, headaches, insomnia, lack of sleep, poor sleep and nightmares.

50. Plaintiff and those similarly situated was/were forced to travel to an area experiencing a

known catastrophic weather event (or risk losing thousands of dollars in pre-paid fares) causing a reasonable fear of great bodily harm and death. At all times material, all similarly effected passengers were in the zone of danger at risk of serious bodily harm, including death due to, *inter alia*, the catastrophic flooding due to Hurricane Harvey.

51. Plaintiff and those similarly situated ticketed aboard the *Liberty of the Seas* were placed in the zone of danger as a result of the catastrophic weather event.  Each Plaintiff was in close proximity to conditions which did cause or could have caused serious physical, mental and/or emotional injury and/or illness.

52. Plaintiff's fear of death and experience of mental, emotional and/or physical harm was genuine and well founded and Plaintiff suffered mental or emotional harm (such as fright and anxiety) that was caused by the negligence of RCCL. This fright and anxiety has further manifested itself as multiple physical symptoms experienced by the Plaintiff, including but not limited to insomnia, depression, anxiety, nightmares, and dizziness.

53. As a result of the negligent inflection of emotional distress by RCCL, Plaintiff was injured about Plaintiff's body and extremities, suffered both physical pain and suffering, mental and emotional anguish, loss of enjoyment of life, temporary and/or permanent physical disability, impairment, inconvenience in the normal pursuits and pleasures of life, feelings of economic insecurity, disfigurement, aggravation of any previously existing conditions therefrom, incurred medical expenses in the care and treatment of their injuries including life care, suffered physical handicap, lost wages, income lost in the past, and their working ability and earning capacity has been impaired. The injuries and damages are permanent or continuing in nature, and Plaintiffs will suffer the losses and impairments in the future.

**WHEREFORE**, the Plaintiff demands judgment for all damages recoverable under the law against the Defendant, including punitive damages, and demands trial by jury.

### COUNT III – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

Plaintiffs re-allege, adopt, and incorporate by reference the allegations in paragraphs 1 through 31 as though alleged originally herein and further allege:

54.     As set forth above, the actions of RCCL were intentional or reckless and inflicted mental suffering.  RCCL's conduct in both placing passengers in a violent storm or risk losing thousands of dollars in pre-bookings and subjecting passengers to a reasonable fear of death, despite RCCL's prior knowledge of the impending storm, was outrageous. This conduct is made more outrageous by the fact that this conduct was motivated by RCCL's desire to make profit rather than ensure the reasonable safety and welfare of its passengers.

55.     RCCL's conduct caused the Plaintiff, and all those similarly situated, to suffer through the fearful conditions alleged above.

56.     All of the conditions previously alleged and endured by the Plaintiff caused severe suffering and emotional distress as these conditions not only led to immediate risk of physical harm but also caused severe discomfort, anxiety, feelings of helplessness/hopelessness as the passengers battled the violent storm.

57.     The conduct of RCCL as alleged above is so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.  Put simply, RCCL recklessly and intentionally put hundreds of its passengers through a living nightmare so it could protect its bottom line.

58.     As a result of the intentional inflection of emotional distress by RCCL, Plaintiff and all those similarly situated was injured about Plaintiff's body and extremities, suffered both physical

pain and suffering, mental and emotional anguish, loss of enjoyment of life, temporary and/or permanent physical disability, impairment, inconvenience in the normal pursuits and pleasures of life, feelings of economic insecurity, disfigurement, aggravation of any previously existing conditions therefrom, incurred medical expenses in the care and treatment of their injuries including life care, suffered physical handicap, lost wages, income lost in the past, and their working ability and earning capacity has been impaired. The injuries and damages are permanent or continuing in nature, and Plaintiff will suffer the losses and impairments in the future.

**WHEREFORE**, the Plaintiff demands judgment for all damages recoverable under the law against the Defendant, including punitive damages, and demands trial by jury.

**DATED September 28, 2017**

        LIPCON, MARGULIES,
        ALSINA & WINKLEMAN, P.A.
        Attorneys for Plaintiffs
        Suite 1776, One Biscayne Tower
        2 South Biscayne Boulevard
        Miami, Florida 33131
        Telephone: (305) 373-3016
        Fax:       (305) 373-6204
        Email:   mwinkleman@lipcon.com
        Website:  www.Lipcon.com

        By    */s/Michael Winkleman*
              **MICHAEL A. WINKLEMAN**
              FLORIDA BAR NO. 36719
              **JASON R. MARGULIES**
              FLORIDA BAR NO. 57916
              **MARC E. WEINER**
              FLORIDA BAR NO. 91699